IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KATHERINE R. FOX                                                                  PLAINTIFF

      v.                                      CIVIL NO. 14-2118

CAROLYN W. COLVIN, Acting Commissioner
Social Security Administration                                           DEFENDANT

**MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

Plaintiff, Katherine Fox, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I. Procedural Background**

Plaintiff protectively filed her application for SSI on July 11, 2011, alleging disability since January 1, 2005, due to depression, high blood pressure, panic disorder, a right foot injury, and being a slow learner. (Tr. 43, 228). The relevant time period in Plaintiff's case is from July 11, 2011, to December 14, 2012. An administrative hearing was held on October 19, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 57-82).

By a written decision dated December 14, 2012, the ALJ found Plaintiff's hypertension, Meniere's disease, obesity, borderline intellectual functioning, and personality disorder were severe impairments. (Tr. 43). After reviewing all of the evidence presented, the ALJ determined Plaintiff's impairments did not meet or equal the level of severity of any impairment in the Listing

of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 44-46). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform sedentary work except:

> the claimant can frequently lift and/or carry less than ten pounds, and occasionally ten pounds, sit for a total of six hours in an eight hour work day, and stand and/or walk for at least two hours in an eight hour work day. The claimant should not be exposed to workplace hazards such as exposure to heights or dangerous machinery. The claimant is able to perform work where interpersonal contact is incidental to the work performed such as assembly work where the complexity of tasks is learned and performed by rote, there are few variables, little judgment is required, and the supervision is simple, direct, and concrete.

(Tr. 46).

With the help of a vocational expert (VE), the ALJ determined Plaintiff was unable to perform her past relevant work (PRW), but could perform the representative occupations of fishing reel assembler, dowel inspector, and addressing clerk. (Tr. 50-51). The ALJ then found Plaintiff had not been under a disability as defined by the Act during the relevant time period. (Tr. 51).

Plaintiff next requested a review of the hearing decision by the Appeals Council, which denied the request on April 7, 2014. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 10, 12).

**II. Evidence Presented**

Evidence before the relevant time period, in relevant part, shows Plaintiff was diagnosed with Bell's palsy and Meniere's disease, and she underwent a nerve compression to treat her Bell's palsy condition in 1997. (Tr. 309-310). Plaintiff also has a history of headaches, and a surgeon repaired her right foot as a child. (Tr. 335-341). In 2006, Plaintiff scored a 76 on an IQ test administered by Dr. Steve Shry placing her in the borderline range of intellectual functioning. (Tr. 417). Dr. Shry administered a second IQ test in 2008 and Plaintiff scored a 69, which suggested

she was "mildly mentally retarded." (Tr. 486). In his evaluation report, Dr. Shry stated Plaintiff only scored low because she gave selective effort on subtests and opined her scattered scoring instead was evidence of a learning disability. (Tr. 487). Plaintiff was also diagnosed with hypertension, anxiety, depression, migraines, and back pain by Dr. Joe Dunaway, who prescribed lorazepam, Paxil, and metoprolol at a visit in September 2008 and Paxil, Ativan, a headache medication, and metoprolol at a follow-up visit in May 2010. (Tr. 513-514).

Dr. Don Ott, a State psychiatrist, examined Plaintiff in July 2010. (Tr. 490-496). Plaintiff reported regular daily activities and stated she did not have problem getting along with people. (Tr. 495). Dr. Ott noted antidepressants had been prescribed since 2006 and Plaintiff smoked one pack per day. (Tr. 491). He assessed Plaintiff with a mood disorder and assigned a Global Assessment of Functioning score of 50-60. (Tr. 494). He opined Plaintiff could cope with demands, although she possessed below average cognitive skills, and had no observable problems with concentration or persistence, but demonstrated delayed pace on answering questions. (Tr. 495). Dr. Garry Stewart, a State physician, examined Plaintiff on July 19, 2010, and determined Plaintiff had normal range of motion in all categories, normal gait, normal reflexes, normal grip and finger manipulation, could squat and rise, and was able to walk on her heels and toes. (Tr. 500-501). Dr. Stewart assessed Plaintiff with obesity and tobacco abuse, and opined she had no physical limitations. (Tr. 502).[1]

Plaintiff saw Dr. Dunaway on January 14, 2011, and reported increased anxiety, weight gain, and new foot pain. (Tr. 504). He assessed Plaintiff with hypertension, obesity, depression/anxiety, and foot pain (Tr. 504). Dr. Dunaway prescribed Paxil, metoprolol, Ativan,

---

[1] These consultative exams were part of the evidence developed in Plaintiff's prior disability claim, which was denied by an ALJ's written decision on June 16, 2011. (Tr. 111-124).

Tenuate, and Tramadol, and noted he filled out Plaintiff's "papers for leave." (Tr. 504). Dr. Dunaway completed a Medical Source Statement dated the same day.[2]

The evidence during the relevant time period is the following. Dr. Bill Payne, a State non-examining physician, submitted a physical RFC assessment dated August 23, 2011, and opined Plaintiff could occasionally lift ten pounds; sit about six hours and stand or walk about six hours in an eight hour workday; and had no push/pull, environmental, manipulative, visual, or communicative limitations. (Tr. 524-526). Dr. Payne noted Plaintiff's average daily activities indicated some limitations, but her most recent consultative exam showed no limitations, and her most recent treatment was for foot pain from her injury in the remote past. (Tr. 529). He opined Plaintiff could perform sedentary work. (Tr. 529).

On October 3, 2011, Plaintiff had new mental examination with Dr. Shry. (Tr. 530-533). Plaintiff reported problems interacting with others, social anxiety, and mood swings, but shared she had never sought mental health treatment other than one counseling session many years ago. (Tr. 530). Dr. Shry noted Plaintiff's current medications were lorazepam, Zoloft, and metoprolol, and she denied side effects. (Tr. 530). According to Dr. Shry, Plaintiff was pleasant and "very relaxed," had a normal mood and affect, and demonstrated appropriate thought process, but referenced ideation and the rapid idealization and devaluation of those around her. (Tr. 531). Plaintiff also "did not cite difficulties performing most daily adaptive functioning tasks," and

---

[2] Dr. Dunaway opined Plaintiff could sit about two hours and stand or walk less than two hours in an eight hour workday; must walk for fifteen minutes every fifteen minutes; needed a sit/stand/walk option; required unscheduled breaks during an eight hour workday; would need to take a twenty minute to two hour break after fifteen minutes of work; would need her legs elevated for eight hours during an eight hour shift; could frequently lift ten pounds and rarely lift twenty pounds; could only rarely look down or look up; could occasionally crouch or climb stairs, rarely stoop, and never twist or climb ladders; had no repetitive reaching, handling or fingering limitations; and would need to be absent more than four days per month from work. (Tr. 506-509).

4

"denied mental difficulty in performance of household chores, but reported physical difficulty." (Tr. 532-533).

Dr. Shry determined Plaintiff was in the upper end of the borderline range intellectually and met the criteria for borderline personality disorder, but noted, based on Plaintiff's self-report, she did not have problems performing most daily adaptive functioning tasks. (Tr. 532). Dr. Shry assigned Plaintiff a GAF of 60 and found she was able to communicate and interact in a socially adequate manner, capable of comprehending and carrying out simple instructions, but might be mildly impaired in her ability to cope with the mental demands of basic work tasks. (Tr. 533). He opined Plaintiff showed good mental attention and an ability to sustain concentration on basic tasks, although she did not appear to tolerate frustrations well for motivational reasons. (Tr. 533). Dr. Shry determined Plaintiff was not impaired in her ability to complete basic work like tasks within an acceptable time frame. (Tr. 533). Dr. Shry also noted Plaintiff's motivation was inconsistent and offered different information at this exam compared to previous ones. (Tr. 533). According to Dr. Shry, "her symptom allegations were incongruent with her overt presentation," and she did not show significant levels of anxiety. (Tr. 533).

On October 13, 2011, Dr. Jay Rankin, a state non-examining physician, completed a mental RFC assessment and found Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in concentration, persistence, or pace; and no episodes of decompensation. (Tr. 552). Dr. Rankin commented on Plaintiff's ability to perform her basic activities of daily living, highlighted the evidence showing Plaintiff demonstrated inconsistent motivation on mental exams, and noted her alleged symptoms were incongruent with her presentation to Dr. Shry. (Tr. 540-541). He opined "though [Plaintiff's] intellect and personality are likely to cause some limitations, overall evidence suggests the

5

claimant is capable of performing [simple, routine, repetitive tasks] where interpersonal contact is limited." (Tr. 541).

On November 1, 2011, Plaintiff saw Dr. Dunaway for a regular check-up to refill her medications. She reported jaw pain, pain and ringing in her ears, dry throat, and a bad taste in her mouth. Dr. Dunaway assessed Plaintiff with Meniere's disease, back pain, anxiety, and a salivary gland obstruction, and he prescribed Norco, metoprolol, Ativan, Koflex, Zoloft, and Maxzide. (Tr. 556).

On March 6, 2012, Plaintiff saw Dr. Dunaway and complained of acne, anxiety, ankle/foot pain, poor sleep, and mood swings. (Tr. 574). Dr. Dunaway switched Plaintiff from Zoloft to Celexa and prescribed doxycycline for her acne, and added Klonopin for her anxiety. (Tr. 574). Dr. Dunaway completed a Medical Source Statement dated the same day. (Tr. 567-572). He opined Plaintiff was incapable of even low stress jobs; could walk one-half of a block; sit one hour and stand fifteen minutes at a time; sit about two hours and stand or walk less than two hours in an eight hour work day; must walk every fifteen minutes for fifteen minutes; required a sit/stand/walk option; would need unscheduled breaks every fifteen minutes for twenty minutes to two hours; needed to elevate her legs; could frequently carry or lift ten pounds and rarely carry or lift twenty pounds; could only rarely look up or down; could occasionally crouch, climb stairs, rarely stoop, and never twist or climb ladders; had no handling or fingering limitations; and would be absent more than four days per month. (Tr. 568-571).

Plaintiff had a follow-up with Dr. Dunaway on June 21, 2012, and complained her back hurt and Celexa had decreased her sex drive. (Tr. 575). Dr. Dunaway switched Plaintiff to Wellbutrin and added Norco. (Tr. 576). On October 22, 2012, Plaintiff complained of headaches and sinus pressure, and Dr. Dunaway diagnosed her with sinusitis. (Tr. 579-582).

Dr. Kay Gale, a State non-examining physician, reviewed Plaintiff's case and affirmed Dr. Rankin's mental RFC assessment on December 2, 2011. (Tr. 561). On December 5, 2011, Dr. Jim Takach, a State non-examining physician, commented Plaintiff's new exams showed her conditions were stable, and affirmed Dr. Payne's physical RFC assessment. (Tr. 566).

Following the relevant time period, Plaintiff saw Dr. Dunaway for checkups on April 22, 2013, and October 28, 2013. (Tr. 14-16). On January 30, 2014, Plaintiff was treated at the Johnson Regional ER for migraines. (Tr. 25-30). Plaintiff's exam was normal, she was treated with pain medication, and discharged with instructions to take Tylenol or Advil. (Tr. 27-30). Plaintiff saw Dr. Dunaway on February 6, 2014, and reported she was trying to diet and lose weight to reduce her back and knee pain, and Dr. Dunaway recommended continued diet and exercise. (Tr. 18-19).

On February 24, 2014, Plaintiff underwent a sleep study, which showed "minimal sleep disordered breathing" with one partial apnea during the night. (Tr. 10). Dr. David Davis recommended Plaintiff lose weight, not sleep on her back, and consider a dental splint to reduce snoring. (Tr. 10-11).

**III. Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have

7

decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.

**IV. Discussion**

On appeal, Plaintiff argues the ALJ: (1) failed to develop the record, (2) did not make a credibility determination, (3) erred in formulating an RFC, and (4) posed an improper hypothetical to the VE. (Doc. 10 at pp. 10-18).

    **A. Full and Fair Development of the Record and Consideration of All Evidence:**

Plaintiff believes the record was not fully and fairly developed because the ALJ did not recontact Dr. Dunaway before discounting his Medical Source Statement. (Doc. 10 at pp. 10-11). She also argues the ALJ failed to consider evidence such as her IQ scores, obesity, and borderline intellectual functioning. (Id. at pp. 11-13).

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In addition to Plaintiff's treatment notes, the record includes two Medical Source Statements and treatment notes from Dr. Dunaway; three mental evaluations from Dr. Shry; consultative exams from State examiners Dr. Ott and Dr. Stewart; four physical RFC assessments from non-examining physicians; and many treatment notes. This was sufficient medical evidence for the ALJ to evaluate Plaintiff's disability claim. Plaintiff does not identify a critical, unaddressed

issue, although she believes the ALJ should have given Dr. Dunaway an additional chance to reconcile his opinions with his treatment notes. (Doc. 10 at p. 11). An ALJ must recontact a treating physician, however, only if a crucial issue is undeveloped. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Dr. Dunaway's Medical Source Statements were not vague and there is no reason to think a critical issue in Plaintiff's treatment was overlooked.

The ALJ's written decision also shows he considered all the evidence in the record. (Tr. 46). Plaintiff's obesity and borderline mental functioning were addressed at step three and four and accounted for by the restrictions in the RFC assessment. The ALJ found Plaintiff's obesity was a severe impairment and "could reasonably limit [her] walking, standing, and lifting, or have adverse effects on other body systems." (Tr. 43). Similarly, the ALJ noted Plaintiff's borderline intellectual functioning was a severe impairment and could cause disorientation, personality changes, emotional lability, or reduced intellectual ability. The ALJ also addressed Plaintiff's IQ score of 76 in 2006. While the ALJ did not specifically cite Plaintiff's IQ score of 69 from 2008, the validity of this score was questioned by Dr. Shry in reports from his 2008 and 2011 evaluations. (Tr. 487, 533). Both of these IQ tests also occurred well before the relevant time period and should only be considered as background information. See Hillier v. Soc. Sec. Admin., 486 F.3d 359, 364 (8th Cir. 2007).

Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

**B. Credibility Analysis:**

The ALJ was required to consider all of the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional

restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. It is well established that "credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966 (8th Cir. 2003)**.**

      The ALJ addressed the Polaski factors in the written decision, but discounted Plaintiff's allegations because her conditions did not prevent her from performing her activities of daily living; her Bell's palsy condition was treated by surgery and Plaintiff did not seek further treatment for Bell's palsy or Meniere's disease; treatment for her headaches was infrequent and conservative; and there was only one mention of a prescription for foot pain in the record during the relevant time period. (Tr. 46-49). These were valid reasons for discounting Plaintiff's claim of disabling pain. See e.g., Guilliams v. Barnhart, 393 F.3d 798, 802-803 (8th Cir. 2005); see also Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir.2000)("Where adequately explained and supported, credibility findings are for the ALJ to make.").

      A review of the record supports the ALJ's credibility determination. Plaintiff testified she drives; shops independently; completes chores such as laundry, dishes, and cleaning; could walk one to two blocks for exercise; and she highlighted her mental problems as her primary issue. (Tr. 70-71, 78). Similarly, on her Function Report and Pain Questionnaire, she indicated her only side effect was drowsiness and reported she cooks, cleans, and takes care of her pets. (Tr. 244-245). Most recently, she denied having any side effects from medications and reported an ability to perform most daily adaptive functioning tasks to Dr. Shry. (Tr. 530). She also reported she socializes with others, runs errands, and her stress and anxiety were her most significant problems. (Tr. 248-250).

11

Accordingly, the undersigned finds the ALJ's credibility determination was based on substantial evidence.

**C. RFC Determination and Weight of Opinion Evidence:**

Plaintiff believes the ALJ should have given more weight to Dr. Dunaway's opinions and formulated an RFC with additional limitations. (Doc. 10 at pp. 15-16). As a result, Plaintiff contends the ALJ did not account for her persistent fatigue, anxiety, depression, side effects, lack of restorative sleep, severe pain, mild retardation, and learning disability. (Id. at p. 16).

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams, 393. F.3d at 801; Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). A claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). Even though the RFC assessment draws from medical sources, it is ultimately an administrative determination. 20 C.F.R. §§ 416.927(e)(2), 416.946; Cox v. Astrue, 495 F.3d 614 (8th Cir. 2007). In evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively, but should "consider at least some supporting evidence from a professional." Lauer, 245 F.3d at 704.

The ALJ properly discounted Dr. Dunaway's second Medical Source Statement.[3] The opinion of a treating physician is accorded special deference and given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). An ALJ must give "give good reasons" for discounting a treating physician's opinion. Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). For instance, a physician's opinion should not receive controlling weight if it is not supported by medically acceptable diagnostic techniques, is inconsistent with other substantial evidence of record, or it is unsupported by the physician's own treatment notes. See Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010). The ALJ identified an absence of x-rays and treatment notes to support Dr. Dunaway's conclusions, the physician's reference to leave papers, Plaintiff's infrequent visits, and the extreme limitations Dr. Dunaway suggested as factors to discount his Medical Source Statements. (Tr. 48).

The ALJ's inference that the reference to leave papers suggested Plaintiff was working is probably incorrect and, by itself, is not a convincing reason to discount Dr. Dunaway's opinions. More likely, Dr. Dunaway was mistakenly referring to the Medical Source Statement form as "leave papers." Dr. Dunaway's confusion, however, highlights why checklist or fill-in the-blank RFC statements, especially from physicians who infrequently see a claimant, are entitled to less weight. See Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). Generic forms, like the ones completed by Dr. Dunaway, are often conclusory, misunderstood, and encourage physicians to express opinions that are not supported by a treatment relationship.

---

[3] Dr. Dunway's first Medical Source Statement is not entitled to great weight because it was dated before the relevant time period. Regardless, the statements express similar opinions.

-13-

Any mistake was harmless, however, because the ALJ also identified Plaintiff's conservative treatment, limited treatment relationship with Dr. Dunaway, and a lack of diagnostic techniques as reasons to question Dr. Dunaway's conclusions. See Bernard v. Colvin, 774 F.3d 482, 487 (8th Cir. 2014). Having reviewed the record, the undersigned finds the ALJ appropriately concluded Dr. Dunaway's opinions were outliers in the record and not entitled to controlling weight. (Tr. 48-49). Dr. Dunaway only saw Plaintiff once during the relevant time period and five times total between September 2008 and March 2012, when Dr. Dunaway authored his second Medical Source Statement. (Tr. 512-514, 556, 574). The records from Dr. Dunaway indicate conservative treatment and do not support the extreme limitations expressed in Dr. Dunaway's Medical Source Statement. For instance, Dr. Dunaway never suggested Plaintiff limit the weight she lifts or discussed a problem with sitting, standing, or walking. Overall, as the ALJ noted, the opinions expressed in Dr. Dunaway's medical source statements are not supported by the record and are contrary to other evidence, which are grounds for assigning less than controlling weight. See Ellis, 392 F.3d at 995.

As for Plaintiff's other limitations, Plaintiff did not seek treatment for a sleeping problem during the relevant time period, and her sleep study after the ALJ's decision only indicated slight breathing problems. (Tr. 10-11). Plaintiff testified her only side effect was drowsiness, but her medications helped with her panic disorder, headaches, and pain. (Tr. 71, 74, 76, 244, 261, 269). Plaintiff, however, did not complain of side effects to her treating physicians other than when she requested her antidepressant be switched because of acne, and she reported to Dr. Shry she did not experience side effects. (Tr. 530, 574). The ALJ addressed Plaintiff's obesity, ear problems, and mental problems, and accounted for them in the RFC determination by limiting Plaintiff to

sedentary work and included several non-exertional limitations. (Tr. 43-49). The ALJ's conclusions were supported by Dr. Shry's opinion that Plaintiff could interact and communicate adequately with others, and had only had mild limitations in her ability to cope with the demands of basic work tasks. (Tr. 533). The ALJ's determination was also supported by the State's consulting physicians, who opined Plaintiff could perform sedentary work where interpersonal contact is limited and involved simple, routine, and repetitive tasks. (Tr. 529, 541, 561, 566). Plaintiff's daily activities included relatively normal activities as a homemaker. She reported an ability to walk one to two blocks for exercise, drive and shop independently, and no problems with lifting, using her hands, reaching, or bending. (Tr. 248-250, 495). This is substantial evidence to support the ALJ's RFC determination. See e.g., Turpin v. Colvin, 750 F.3d 989, 994-995 (8th Cir. 2014).

Based on the foregoing, the undersigned finds there is substantial evidence to support the ALJ's RFC findings.

### D. Hypothetical Question

Plaintiff's final argument is the hypothetical posed by the ALJ to the VE did not account for all Plaintiff's limitations. (Doc. 10 at pp. 17-18).

The hypothetical question, however, only needs to include the impairments and limitations found credible by the ALJ. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005). The ALJ posed to following hypothetical to the VE:

> [A]ssume we have an individual who is the same age, education and work background as that of the claimant. Assume further this individual were [*sic*] limited from an exertional standpoint to sedentary work. Assume further this individual would need to work at a job that did not risk exposure to heights or dangerous machinery. Assume further this individual would need to work at a job which involved simple tasks and simple instructions. Are there jobs such a person could perform?

(Tr. 80). In response, the VE testified Plaintiff could perform the representative occupations of fishing reel assembler, dowel inspector, and addressing clerk. (Tr. 80-81). Such testimony, based on a hypothetical question consistent with the record, constitutes substantial evidence. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

Accordingly, the undersigned finds the ALJ's step five determination is based on substantial evidence.

**V. Conclusion:**

For the above reasons, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 22nd day of June, 2015.

s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE
